UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STACI D. HARDY, Guardian Ad Litem of JORDAN M. HARDY-BRICE,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | No. CV 07-1764-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Staci D. Hardy ("plaintiff"), on behalf of her minor daughter Jordan M. Hardy-Brice ("Jordan"),[1] filed this action on March 21, 2007, seeking review of the Commissioner's denial of Jordan's applications for Child's Insurance Benefits and a Lump-Sum Death Payment. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 4, 2007. Pursuant

---

[1] The Court is mindful of General Order No. 08-02, which indicates that, in a case involving a minor child, only the initials of the child should be used. See General Order No. 08-02(IV)(E)(3). However, as the parties have used the full name of the child in this case in public documents filed with the Court, the Court will continue such usage in this Order.

to the Court's Order, the parties filed a Joint Stipulation on November 20, 2007, that addresses their positions concerning the disputed issue in the case. On April 22, 2008, the parties presented their arguments to the Court regarding the disputed issue. The parties filed supplemental briefing on May 9, 2008, and the matter was taken under submission.

## II.

## BACKGROUND

On August 13, 2004, and September 28, 2004, plaintiff filed applications for Jordan[2] seeking Child's Insurance Benefits and a Lump-Sum Death Payment, alleging that Jordan qualifies as the child of Donnell Delon Brice ("Donnell") under the Social Security Act. [Administrative Record ("AR") at 27-32, 33-34.] After the applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 35-38, 41-49.] A hearing was held on March 2, 2006. [AR at 117-33.] Jordan appeared with counsel at the hearing. [AR at 119.] Plaintiff also appeared at the hearing and testified as a witness. [AR at 120-30.]

In the revised decision dated April 3, 2006,[3] the ALJ found that Jordan was "not eligible for Survivor benefits under the Social Security Act." [AR at 18.] Plaintiff filed a request for review of the hearing decision. [AR at 9-10, 14.] On January 26, 2007, the Appeals Council denied plaintiff's request for review and advised plaintiff that the ALJ's decision would stand as the final decision of the Commissioner in Jordan's case.[4] [AR at 4-7.]

---

[2] Both of plaintiff's applications, as well as the ALJ's decision, indicate that Jordan's last name is "Hardy-Miller." [AR at 15-16, 27, 33.] The "Miller" portion of the last name is not identified in the record. However, Jordan's last name on the Complaint is "Hardy-Brice," which is consistent with plaintiff's testimony at the March 2, 2006, hearing that Jordan's birth certificate was amended to reflect the last name of "Hardy-Brice." [AR at 127-28.]

[3] The ALJ's initial decision dated March 29, 2006, was rescinded and replaced by the revised decision dated April 3, 2006. [AR at 13A-K, 15.]

[4] The Appeals Council referenced the March 29, 2006, decision in the "Notice of Appeals Council Action." [AR at 4.] However, in light of the fact that the March 29, 2006, decision was replaced by the revised decision dated April 3, 2006, the revised decision is controlling in this

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **DISCUSSION**

Plaintiff contends that "the ALJ's denial of plaintiff's Child's Social Security Survivor Benefits claim was based upon incorrect application of statutory and case law." Joint Stipulation ("Joint Stip.") at 3. For the reasons set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

**A.   THE APPLICABLE STATUTES AND REGULATIONS**

The Social Security Act requires the Commissioner to determine whether a child is entitled to receive child's survivor benefits. See 42 U.S.C. § 402(d). Under 42 U.S.C. § 402(d), in order

---

case. [AR at 15-18.]

to qualify for child's insurance benefits, the claimant, as relevant here, must show that she was a child of, and dependent on, the wage earner at the time of the wage earner's death. 42 U.S.C. § 402(d)(1)(C). The Social Security Act outlines the requirements for establishing a parental relationship. See 42 U.S.C. § 416(h)(2)(A)-(3)(C). Under section 416(h)(2)(A), a claimant who is deemed to be the child of the deceased insured individual under the law of intestate succession of the state in which the decedent was domiciled at the time of his death is considered to be the child of the decedent for purposes of the Social Security Act. See 42 U.S.C. § 416(h)(2)(A). If the claimant is unable to meet the requirements of the state's intestacy laws in order to qualify as a "child" under section 416(h)(2)(A), the claimant may still establish that she is the child of the deceased insured individual by satisfying the requirements of sections 416(h)(2)(B) or 416(h)(3)(C) of the Social Security Act. Section 416(h)(2)(B) provides that a claimant may establish that she is the child of the deceased by showing that the insured individual and the claimant's other parent went through a marriage ceremony, which but for a legal impediment would have created a valid marriage. See 42 U.S.C. § 416(h)(2)(B). Alternatively, a claimant may be deemed the "child" of a deceased insured individual if the insured individual had acknowledged in writing that the claimant is his child, had been decreed by a court to be the father of the child, or had been ordered by a court to contribute to the claimant's support, and such acknowledgment, court decree or court order was made before the death of the insured individual. See 42 U.S.C. § 416(h)(3)(C)(i)(I)-(III). Paternity may also be established if there is satisfactory evidence that the insured individual was the claimant's parent and the insured individual was living with or contributing to the support of the claimant at the time of death. See 42 U.S.C. § 416(h)(3)(C)(ii).

Federal regulations also instruct when a claimant is the "child" of a deceased insured individual. Pursuant to 20 C.F.R. § 404.355, a child is eligible for benefits as the insured's natural child if: (1) the claimant could inherit the insured's personal property as his natural child under state inheritance laws; (2) the claimant is the insured's natural child and the insured and the claimant's mother went through a ceremony which would have resulted in a valid marriage between them except for a legal impediment; (3) the claimant is the insured's natural child and the claimant's mother never married the insured, but before the insured's death, the insured had either

acknowledged in writing that the claimant is his child, been decreed by a court to be the claimant's father, or been ordered by a court to contribute to the claimant's support because the claimant is his child; or (4) the claimant's mother never married the insured but the claimant has other evidence to show that the insured is her natural father, as well as evidence to show that the insured was either living with the claimant or contributing to the claimant's support at the time of the insured's death. See 20 C.F.R. § 404.355(a)(1)-(4). Incorporated by reference into paragraph (a) of section 404.355 is paragraph (b) of that same section, which states that the intestacy laws of the state where the insured had his permanent home when he died are used to determine whether a claimant has inheritance rights as the natural child of the insured. 20 C.F.R. § 404.355(b)(1). The application of state law regarding intestate succession is modified by 20 C.F.R. § 404.355(b)(2).[5] That section provides in relevant part that:

> (2) Standards. We will not apply any State inheritance law requirement that an action to establish paternity must be taken within a specified period of time measured from the worker's death or the child's birth, or that an action to establish paternity must have been started or completed before the worker's death. If applicable State inheritance law requires a court determination of paternity, we will not require that you obtain such a determination but will decide your paternity by using the standard of proof that the State court would use as the basis for a determination of paternity.

20 C.F.R. § 404.355(b)(2). Section 404.355(b)(2) thus eliminates any state law requirement that an action to establish paternity be taken within a specified period of time, or be commenced or completed before the death of the insured individual, as well as the requirement that a claimant for child's survivor benefits obtain a state court order establishing paternity; it instead applies the standard of proof that the state court would use as a basis for a determination of paternity. See 20 C.F.R. § 404.355(b)(2). Accordingly, a state's time frame within which a child's relationship must be established for purposes of state inheritance law is not determinative of the child's status under the Social Security Act. See id.

---

[5] 20 C.F.R. § 404.355 was amended, effective November 27, 1998, to disregard state law time limit requirements for establishing a parental relationship. 20 C.F.R. § 404.355(b)(2).

5

Under California law, a parental relationship exists for the purpose of determining intestate succession "between a person and the person's natural parents, regardless of the marital status of the natural parents." Cal. Prob. Code § 6450. California Probate Code section 6453 states that:

> For the purpose of determining whether a person is a "natural parent" as that term is used in this chapter:
>
> (a) A natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12 of the Family Code).
>
> (b) A natural parent and child relationship may be established pursuant to any other provisions of the Uniform Parentage Act, except that the relationship may not be established by an action under subdivision (c) of Section 7630 of the Family Code unless any of the following conditions exist:
>
> (1) *A court order was entered during the father's lifetime declaring paternity.*
>
> (2) Paternity is established by clear and convincing evidence that the father has openly held out the child as his own.
>
> (3) It was impossible for the father to hold out the child as his own and paternity is established by clear and convincing evidence.
>
> (c) A natural parent and child relationship may be established pursuant to Section 249.5.

Cal. Prob. Code § 6453 (emphasis added).

## B.  RELEVANT FACTS AND THE PARTIES' POSITIONS

Jordan was born on May 28, 2003. [AR at 52, 113.] After Donnell's death on July 5, 2004, DNA testing showed a 99.99999998% probability that Donnell was the father of Jordan. [AR at 60, 112.] On September 12, 2005, the Los Angeles County Superior Court entered a judgment finding that Donnell was the father of Jordan. [AR at 110-11.] Plaintiff asserts that "[Jordan] is entitled to child's benefits on the basis of a California court order decreeing that [Jordan] was the daughter of the deceased wage-earner," and that Jordan provided "'clear and convincing evidence of paternity' that should satisfy the requirements of California Probate law." Joint Stip. at 5. Plaintiff contends that the express language of the 1998 amendments to 20 C.F.R. § 404.355(b)(2) eliminated the requirement in California Probate Code § 6453(b)(1) that a court order be entered

"during the father's lifetime." See Joint Stip. at 4-5; see also plaintiff's Supplemental Brief at 1-2. Plaintiff further asserts that the California statute requiring that a court order establishing paternity be entered during the father's lifetime violates the equal protection clause. Joint Stip. at 6. Defendant contends that "[p]laintiff is not eligible for child survivor benefits under the Social Security Act" as the ALJ "properly interpreted Social Security and California intestacy law and found that [p]laintiff had not established [her] status as the dependent child of the deceased wage earner." Joint Stip. at 7.

## C. THE ALJ'S DECISION

In determining that Jordan was not eligible for child's survivor benefits under the Social Security Act, the ALJ relied on 20 C.F.R. § 404.355 and California Probate Code § 6453. The ALJ indicated that plaintiff and Donnell were never married, and no court order was entered during Donnell's lifetime declaring him to be the father of Jordan. [AR at 16-17, 121.] Furthermore, the ALJ noted that Donnell never held Jordan out as his own, and indicated that it was not impossible for him to do so.[6] [AR at 16-17, 125-27.] Plaintiff does not contest these findings in the Joint Stipulation.

In the decision, the ALJ discounted plaintiff's argument that the 1998 amendments to section 404.355 eliminated the requirement under California law that a paternity order be entered "during the father's lifetime." [AR at 17.] Although the ALJ acknowledged that "[t]he law in this area is complicated, technical, and derived from multiple sources" (AR at 16), the ALJ determined that section PR 01010.006 of the Social Security Administration's Program Operations Manual ("POMS")[7] summarized the rules applicable to this case:

---

[6] The ALJ pointed out that Donnell had an intimate relationship with plaintiff and could have adopted Jordan even if he were not the biological father. [AR at 17.]

[7] Although the POMS "is an internal Social Security Administration manual, for the internal use of Social Security Administration employees, and has no legal force and does not bind the Social Security Administration" (Knott v. Barnhart, 269 F. Supp. 2d 1228, 1234 (E.D. Cal. 2003) (citation omitted)), it is persuasive authority. See Hermes v. Secretary of Health & Human Servs., 926 F.2d 789, 791 n.1 (9th Cir. 1991). The various sections of the POMS referenced in this Order can be

> If a [Uniform Parentage Act ("UPA")] court action is filed under California Family Code section 7630(c), the court order of paternity must be entered during the lifetime of the father. If the court order was not entered during the father's lifetime, there must be clear and convincing evidence that the father openly held the child out as his own, or, if it was impossible for the alleged father to openly hold out the child as his own, there must be clear and convincing evidence establishing paternity. Cal. Prob. Code § 6453(b).

See POMS § PR 01010.006. The ALJ noted that a court of competent jurisdiction entered a judgment declaring paternity, but concluded that the judgment was immaterial to his decision because it was not entered before Donnell's death. [AR at 17-18.] In so concluding, the ALJ relied on the POMS, i.e., the agency's interpretation of the regulation at issue here. [AR at 17-18.] The ALJ found that "paternity cannot be established under [the] state inheritance law provision of 20 C.F.R. § 404.355 and no other category of entitlement arguably applies." [AR at 17.]

### D.     JORDAN IS NOT ENTITLED TO BENEFITS

The Social Security Act provides for payment of child's survivor benefits to a claimant when certain criteria are met. The issue of paternity is determinative as to whether a claimant is entitled to such benefits. It is also a necessary element in determining a claimant's eligibility as a "natural child" pursuant to 20 C.F.R. § 404.355, as well as in establishing whether a deceased insured individual was the "natural parent" of the claimant under the California Probate Code.

Under a plain reading of the provisions of the federal statute applicable to this case, independent of the federal regulations, plaintiff cannot establish that Jordan is a child of Donnell for the payment of benefits. First, Jordan cannot inherit Donnell's personal property under California law. See 42 U.S.C. § 416(h)(2)(A). Second, Jordan is not the child of Donnell pursuant to § 416(h)(2)(B) because plaintiff and Donnell never went through a marriage ceremony. [AR at 16.] See 42 U.S.C. § 416(h)(2)(B). Third, Jordan is not the child of Donnell pursuant to § 416(h)(3)(C) because (i) Donnell did not acknowledge in writing that Jordan was his child before his death, nor was he decreed to be her father by a court prior to his death or ordered by a court

---

found on the Social Security Online database, at https://secure.ssa.gov/apps10/poms.nsf/partlist.

to contribute to her support before his death, and (ii) the record did not establish that Donnell was her natural father and that he was living with or supporting Jordan at the time of his death. [AR at 16.] See 42 U.S.C. § 416(h)(3)(C).

Turning to the federal regulations, although Jordan arguably may be eligible for child's insurance benefits under 42 U.S.C. § 416(h)(2)(A) based on the application of 20 C.F.R. § 404.355(a)(1) and 20 C.F.R. § 404.355(b)(2),[8] plaintiff has not shown that Jordan satisfied the alternative methods of establishing paternity under the regulations. See 20 C.F.R. § 404.355(a)(2); see also 20 C.F.R. §§ 404.355(a)(3), (4). Finally, neither has plaintiff demonstrated that Jordan satisfied the requirements of California Probate Code §§ 6453(b)(2) or (3), despite plaintiff's assertion that the court decree entered after Donnell's death was issued on the basis of DNA testing (see Joint Stip. at 5, 11), as there is no evidence that Donnell openly held Jordan out as his own, or that it was impossible to hold out Jordan as his own. See POMS § GN 00306.430 (stating that "a child may provide other evidence to establish paternity, so long as the child can meet the holding out [requirement] or impossibility of holding out requirement . . . ."). Thus, the only possible provisions under which Jordan could prevail under 42 U.S.C. § 416(h)(2)(A) are 20 C.F.R. §§ 404.355(a)(1), (b)(2) and California Probate Code § 6453(b)(1).

Under the federal regulations, Jordan is eligible as a child of Donnell, and thus entitled to child survivor benefits, if plaintiff can establish a parental relationship under California Probate Code § 6453(b)(1).[9] See Cal. Probate Code § 6453(b)(1) (a parental relationship may be established if a paternity order was entered during the lifetime of the father). The only way that plaintiff can establish a parental relationship under § 6453(b)(1) is if she can show that the state law time limits referenced in 20 C.F.R. § 404.355(b)(2) eliminated the requirement that a court

---

[8] According to the Social Security Administration ("SSA"), "a State's time limits within which a child's relationship must be established" for purposes of intestate succession are not applicable to a determination of the child's status under section 416(h)(2)(A). See Application of State Law in Determining Child Relationship, 63 Fed. Reg. § 57590, 57591 (Oct. 28, 1998).

[9] There does not appear to be any dispute that Donnell was domiciled in California at the time of his death.

9

order of paternity be entered "during the father's lifetime." The ALJ found that it did not, and that finding is entitled to deference.

Although the Court acknowledges, as did the ALJ, that this area of the law is complicated (AR at 16), plaintiff's argument that the 1998 amendments to 20 C.F.R. § 404.355 eliminated the requirement that an order of paternity be entered "during the father's lifetime" fails. While 20 C.F.R. § 404.355(b)(2) provides that the SSA "will not apply any State inheritance law requirement that an action to establish paternity . . . be taken within a specified period of time measured from the worker's death or the child's birth, or . . . have been started or completed before the worker's death," this regulatory language has not been interpreted as eliminating the "during the father's lifetime" requirement found in California Probate Code § 6453(b)(1).[10] See POMS § PR 01010.006 (under the regulations, in applying California law, if there is no court order entered during the father's lifetime, the SSA will (1) apply the clear and convincing standard of proof to determine whether the father has held the child out as his own; or (2) determine whether there is clear and convincing evidence of paternity if it was impossible for the father to openly hold the child out as his own); see also POMS § GN 00306.430 (for court orders entered, or SSA determinations made, after the father's death, the claimant must also meet the holding out and impossibility of holding out requirements set forth in California Probate Code § 6453(b)(2)-(3)); POMS § GN 00306.075 (POMS § GN 00306.430 reflects the SSA's policy in the "new regulations" regarding state law time limits).[11] Thus, the agency does not interpret the elimination of the state

---

[10] In several post-1998 cases cited in the POMS § PR 01115.006, the SSA, applying the amended regulation, determined that since there was no court order declaring paternity entered during the wage earner's lifetime, the claimant could not meet the requirements of California Probate Code § 6453(b)(1). See POMS § PR 01115.006. There, although a court order declaring paternity was entered after the wage earner's death, the SSA nevertheless determined that a claimant must still prove by clear and convincing evidence that the wage earner openly held the child out as his own, or demonstrate that it was impossible for the wage earner to have held her out as his own child and establish paternity by clear and convincing evidence. See id.; see also POMS § PR 01010.006; POMS § GN 00306.430.

[11] In support of the ALJ's decision, defendant relies, in part, on POMS § GN 00306.430. See Joint Stip. at 8. Plaintiff's contention that the POMS "do not specify that the court paternity decree be entered prior to the wage-earner's death" is inaccurate. Joint Stip. at 5 (emphasis in original).

10

law time limits referenced in § 404.355(b)(2) to relate to California's requirement that a court order of paternity be entered "during the father's lifetime," as evidenced by the agency's continued application in the POMS of the "during the father's lifetime" requirement.[12]  It is well established that an agency has the authority to interpret its own regulations in light of its "unique expertise." See Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 151, 111 S. Ct. 1171, 113 L. Ed. 2d 117 (1991) ("Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, [courts] presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers."); see also Thomas Jefferson University v. Shalala, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994) (deference to an agency's interpretation is warranted all the more when "the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entails the exercise of judgment grounded in policy concerns") (citation omitted); Department of Health & Human Services v. Chater, 163 F.3d 1129, 1135 (9th Cir. 1998) (deference is afforded to an agency's reasonable construction of its own regulatory language because its expertise makes it well-suited to interpret its own language).  As such, the ALJ's adoption of the agency's interpretation in the POMS was proper.

A close examination of relevant case law also undermines plaintiff's argument that § 404.355(b)(2) eliminated the requirement under California law that a court order establishing paternity be entered "during the father's lifetime."[13]  Rather, the case law lends support to the

---

[12] The POMS provisions "reflect the Secretary's interpretation of the statutes and regulations he administers." Baker v. Sullivan, 1991 WL 104306, at *1 (C.D. Cal. 1991) (citing Evelyn v. Schweiker, 685 F.2d 351, 352 n.5 (9th Cir. 1982)).

[13] In Casserino v. Sullivan, 921 F.2d 862 (9th Cir. 1990), relying on 42 U.S.C. § 416(h)(3)(C)(i)(II), the court determined that plaintiff was not eligible to receive social security child's benefits because the paternity decree was not entered until after the father's death. See Casserino, 921 F.2d at 863-64 (benefits cannot be awarded on the grounds that the child constructively satisfied the statute requiring that a court decree be entered before the insured's death where the judgment of paternity was not entered against the father until two weeks after his death). Plaintiff's contention that Casserino has been superseded by the 1998 amendments to 20 C.F.R. § 404.355, and thus "is no longer 'good law' as asserted by the ALJ," is not well-

conclusion that the elimination of state time limits under § 404.355(b)(2) concerns a state's statutory time limitations within which an individual must act to establish paternity for purposes of intestate succession, not the "during the father's lifetime" requirement under California law. See, e.g., Drake ex rel. Atwood v. Apfel, 2001 WL 705784, at *2 (N.D. Tex. June 18, 2001) (noting that 20 C.F.R. § 404.355(b)(2) "removes any requirement that an action to determine paternity be filed within a state-imposed limitations period," but "does not disturb the necessary legal bases for establishing paternity under state law . . . ."); Javier v. Commissioner of Social Security, 407 F.3d 1244, 1248 (D.C. Cir. 2005) (20 C.F.R. § 404.355(b)(2) is intended "to allow a child to establish a filial relation without regard to state statutes of limitation that would otherwise bar a paternity suit . . . ."); but cf. Low Dog v. Barnhart, 196 F. Supp. 2d 960, 966 (D.S.D. 2002) ("an order of paternity [entered after the lifetime of the father], together with the sworn testimony of a child's mother of exclusive access by decedent, can be considered as evidence of paternity" under New York law).

      Moreover, plaintiff's argument that the "during the father's lifetime" requirement under California law was eliminated based on § 404.355(b)(2) is not only rebutted by the agency's interpretation in the POMS and the relevant case law, but it is also inconsistent with the alternate methods for establishing a parental relationship under federal statute and regulation. The statute and regulation specifically require that an acknowledgment, court decree, or court order be made or issued before the death of the insured individual. See 42 U.S.C. § 416(h)(3)(C); see also 20 C.F.R. § 404.355(a)(3). Indeed, the regulation was amended in 1984 to expressly reflect the "before the death" requirement in § 416(h)(3)(C) of the Social Security Act, i.e., 20 C.F.R. § 404.355(a)(3) was amended to provide that the written acknowledgment, court decree, or court order must be made before the death of the insured to establish a parent-child relationship.[14] See Federal Old-Age, Survivors, and Disability Insurance; Gender Discrimination; Foreign Work Test;

---

taken. Joint Stip. at 4. Although Casserino was decided prior to the enactment of the 1998 amendments to 20 C.F.R. § 404.355, it has not been overruled or superseded by statute.

[14] This amendment was added because the regulation in effect at the time did not expressly state the time requirement specified in 42 U.S.C. § 416(h)(3)(C).

12

Special Age-72 Benefits; Benefit Reduction for Widows and Widowers; and Acknowledgment of Natural Child, 49 Fed. Reg. § 24113, 24114 (June 12, 1984). Notably, the SSA has not amended the regulation to eliminate the requirement under 20 C.F.R. § 404.355(a)(3) that a court order of paternity be issued before the death of the insured individual. Given that the agency's interpretation of the regulation contained in the POMS is consistent with the federal statute and regulation as a whole, as well as the relevant case law, it is not unreasonable, and thus is entitled to deference.[15] See Washington State Dep't of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 387-88, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003) (deference should be given to the Commissioner's interpretation of her own regulation when it is "eminently sensible"); see also Campbell ex rel. Campbell v. Apfel, 177 F.3d 890, 893 (9th Cir. 1999) ("federal courts defer to an agency's reasonable interpretation of its statutes and regulations"); Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006) ("the Commissioner's plausible interpretation of her agency's own regulation is entitled to deference") (citing Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001)); see, e.g., Baker, 1991 WL 104306, at *2 (deference should be given to the agency's interpretation as contained in the POMS); Bowles v. Barnhart, 392 F. Supp. 2d 738, 744 (W.D. Va. 2005) ("[i]t is well established under the law that agencies have the inherent right to determine the meaning of their own regulations.") (citing Auer v. Robbins, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)); McNamar v. Apfel, 172 F.3d 764, 766-67 (10th Cir. 1999) (holding certain POMS sections entitled to controlling weight unless arbitrary or capricious); Bubnis v. Apfel, 150 F.3d 177, 181 (2nd Cir. 1998) (agency's interpretation in POMS entitled to deference and "will not be disturbed as long as . . . reasonable and consistent with the statute"). As such, the ALJ did not err in his reliance on the POMS and properly applied 20 C.F.R. § 404.355 in determining that Jordan is not entitled to child's survivor benefits.

---

[15] Plaintiff has not demonstrated why deference should not be given to the agency's interpretation in the POMS, or why the interpretation of the regulation contained in the POMS is unreasonable.

1 **E.    NO EQUAL PROTECTION VIOLATION**

2 Plaintiff further contends, relying on Daniels on Behalf of Daniels v. Sullivan, 979 F.2d 1516 (11th Cir. 1992), that "application of the California intestacy succession statute requiring that paternity be established prior to the death of the parent would clearly result in violation of the child's right to equal protection of the law." See Joint Stip. at 6; see also plaintiff's Supplemental Brief at 3. Plaintiff's reliance on Daniels is misplaced. At issue in Daniels was the Georgia intestacy law which provided that:

> [a] child born out of wedlock may not inherit from or through his father or any paternal kin by reason of the paternal kinship unless, *during the lifetime of the father* and after the conception of the child, either (1) a court of competent jurisdiction has declared the child to be legitimate or has entered an order establishing paternity or (2) the father has signed the birth certificate or executed a signed, sworn statement attesting to paternity.

Daniels, 979 F.2d at 1518 (emphasis added). In Daniels, the claimant argued that the Georgia intestacy law requiring that paternity be established during the lifetime of the father, as applied to the facts of his case, violated his right to equal protection of the law. Daniels, 979 F.2d at 1518. The court in Daniels concluded that, as applied to the claimant's case, the requirement that paternity be established during the lifetime of the father effectively imposed an insurmountable barrier, and thus "the Social Security Act's incorporation of the Georgia intestacy scheme violates equal protection."[16] Id. at 1520.

Unlike the Georgia intestacy scheme's requirement in Daniels that an illegitimate child establish paternity during the lifetime of the father as a condition precedent to the satisfaction of the remaining requirements of the statute,[17] the California intestacy statute's requirement at issue

---

[16] The Supreme Court has articulated two tests for assessing the constitutionality of classifications based on illegitimacy, i.e., the "insurmountable barrier" test (Gomez v. Perez, 409 U.S. 535, 538, 93 S. Ct. 872, 35 L. Ed. 2d 56 (1973); Labine v. Vincent, 401 U.S. 532, 539, 91 S. Ct. 1017, 28 L. Ed. 2d 288 (1971)), and the less stringent "substantial relationship" test (Lalli v. Lalli, 439 U.S. 259, 265, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978); Trimble v. Gordon, 430 U.S. 762, 772-74, 97 S. Ct. 1459, 52 L.Ed.2d 31 (1977)).

[17] The Georgia law in Daniels provided that a child born out of wedlock may inherit from or through his father or any paternal kin only if the criteria specified in the statute were satisfied "during the lifetime of the father . . .".

14

1 here that a court order declaring paternity be entered during the father's lifetime is merely one of
2 the ways to establish paternity under the statute.  As such, California's intestacy statute is not as
3 limiting as the Georgia law in Daniels.  While a court order entered during the father's lifetime will
4 legitimatize a child in California, the statute also provides alternate methods by which paternity can
5 be established.  See Cal. Prob. Code § 6453(b)(1)-(3).  In this case, plaintiff was not completely
6 foreclosed from establishing paternity by the "during the father's lifetime" language; rather, plaintiff
7 could have established paternity by providing clear and convincing evidence that Donnell openly
8 held out Jordan as his own, or by showing that it was impossible for Donnell to hold out Jordan as
9 his own and by establishing paternity by clear and convincing evidence.  Id.  Thus, California's
10 intestacy scheme, as applied to Jordan, did not deny her the equal protection of the law.  See Lalli
11 v. Lalli, 439 U.S. 259, 265, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978) (upholding as constitutional a
12 New York statute that required an illegitimate child to obtain a court order of paternity during the
13 lifetime of his father in order to inherit from his father by intestate succession); see also Campbell,
14 177 F.3d at 894 (California statute providing that a court order establishing paternity must be issued
15 during the father's lifetime, for purposes of intestate succession, did not violate the equal protection
16 clause); Casserino, 921 F.2d at 863-64 (requiring that the judgment of paternity be entered prior
17 to the father's death does not violate equal protection); Trammell on Behalf of Trammell v. Bowen,
18 819 F.2d 167, 170 (7th Cir. 1987) ("[paternity] [o]rders obtained during the supposed father's life
19 are more likely to be accurate because, if the child names the wrong person, he is apt to encounter
20 resistance");  see, e.g., Abkes v. Apfel, 30 F. Supp. 2d 1149, 1157 (N.D. Iowa 1998) (the
21 requirement that paternity be established during the father's lifetime under Iowa intestacy law, as
22 applied to the claimant, is not unconstitutional); Hullum by Watson v. Sullivan, 762 F. Supp. 1324,
23 1330-31 (N.D. Ill. 1991) (statute barring illegitimate child from inheriting intestate property because
24 paternity was not adjudicated before his father's death does not deny equal protection); but cf.
25 Handley, By and Through Herron v. Schweiker, 697 F.2d 999, 1002 (11th Cir. 1983) ("there was,
26 for all practical purposes, no time during which parent and child were simultaneously alive, and
27 consequently no time when a paternity proceeding could have been brought"); Mills v. Habluetzel,
28

1 | 456 U.S. 91, 101, 102 S. Ct. 1549, 71 L. Ed. 2d 770 (1982) (holding that "[t]he one-year period for
2 | establishing paternity denies illegitimate children in Texas the equal protection of law").
3 |  Accordingly, remand is not warranted as the ALJ's decision to deny child's survivor benefits
4 | was free from legal error, is supported by the record, and is entitled to deference.

## V.
## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: March 13, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE